UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TYRRELL WINSTON,<br><br>*Plaintiff*,<br><br>v.<br><br>NEW ORLEANS PELICANS NBA, LLC, and JOHN DOES 1-5,<br><br>*Defendants*. | Civil Action No. 1:25-cv-12346<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tyrrell Winston ("Plaintiff" or "Mr. Winston"), by his attorneys, Jayaram PLLC, as and for his Complaint against Defendant New Orleans Pelicans NBA, LLC ("Defendant" or "Pelicans") and Defendant John Does 1-5, states as follows:

NATURE OF THE ACTION

1. This is an action for direct, contributory, and vicarious copyright infringement arising under the United States Copyright Act, 17 U.S.C. § 101 et seq.

2. Mr. Winston is an internationally acclaimed visual artist recognized for his distinctive two-and three-dimensional sculptures of deflated basketballs, arranged in precise grid compositions.

3. Mr. Winston's basketball wall sculptures have been exhibited in galleries and museums around the world, and have also been commissioned and licensed by brands such as Nike, adidas, Aimé Leon Dore, and multiple NBA teams. He exercises strict control over the context and associations in which his works are presented.

4. Without authorization, Defendants – a NBA team - created and publicly displayed an unauthorized work substantially similar to Mr. Winston's copyrighted work (the "Infringing

Work"), which was used to promote the Pelicans via their official @pelicansnba Instagram account (the "Infringing Posts").

5. The Infringing Work mimics the unique style, concept, and overall visual impact of Mr. Winston's sculptures, thereby infringing Mr. Winston's exclusive rights under the Copyright Act.

6. Below, left, is "*Manhattanhenge*" and "*R.O.I.*" (collectively, "the Artwork"). Below, right, is a sample of Infringing Posts.



| The Artwork | The Infringing Posts |
|---|---|
| *Manhattanhenge* <br> VA 2-453-149 | |

| *R.O.I.* VA 2-453-148 | |
|---|---|

7. Mr. Winston brings this action to enjoin Defendant's unauthorized conduct and to recover damages for Defendant's unlawful copying, public display, and exploitation of the Artwork.

8. Mr. Winston seeks damages and injunctive relief for direct, contributory and vicarious copyright infringement, arising from the unlawful use of a copy of his Artwork in violation of the United States Copyright Act, 17 U.S.C. § 101 *et seq*. (the "Copyright Act").

## PARTIES, JURSIDICTION AND VENUE

9. Mr. Winston is a resident of Franklin, Michigan.

10. Upon information and belief, Defendant New Orleans Pelicans NBA, LLC is a Delaware limited liability company with its principal place of business at 5800 Airline Drive, Metairie, Louisiana 70003. Defendant conducts systematic and continuous business in Detroit, Michigan, including marketing and professional basketball events in this District.

11. Upon information and belief, Defendants John Does 1-5 are individuals or entities involved in the creation, design, promotion, and/or dissemination of the Infringing Work and Infringing Posts.

12. This Court has subject matter jurisdiction pursuant to 17 U.S.C. § 501 (copyright infringement), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338(a) (acts of Congress relating to copyrights).

13. This Court has personal jurisdiction over Defendants because the Defendants regularly transacts or solicits business in Michigan, have committed a tortious act in Michigan, or have committed a tortious act that has caused damage to the Plaintiff in this state.

14. Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1391(a)-(b).

## FACTUAL BACKGROUND

**The Artwork**

15. Tyrrell Winston is a globally recognized contemporary artist whose practice is rooted in the intersection of fine art, urban culture, and professional sports. Over the past decade, he has developed a body of work that has earned international acclaim for its originality, emotional resonance, and cultural significance.

16. Central to Mr. Winston's practice is his signature use of found, deflated basketballs. These objects, collected from urban courts across the country, are flattened and meticulously arranged in grid formations. The resulting sculptures portray a deep narrative, each basketball bearing the marks of its past use and collectively evoking a sense of memory, loss, and community.

17. These basketball sculptures have arguably become Winston's most recognizable body of work. He treats each discarded basketball as a vessel of history, preserving its condition as found and assembling them in a manner that reflects both order and chaos. The result is a visual piece that is instantly identifiable and uniquely his own.

18. In particular, Mr. Winston's *Skewers* series has drawn widespread attention for its thoughtful composition and emotional depth. These works feature basketballs arranged in horizontal or vertical lines, allowing the disfigured forms to act in chorus, each one contributing to a larger, abstracted record of human experience.

| **Examples of Artworks by Tyrrell Winston** ||
|---|---|
| <br>*"Physical and Arrogant"* | <br>*"Hail Mary"* |
| <br>*"What's the Most Amount of Money You Ever Stole and Got Away With?"* | <br>*"Drugs Under The Bleachers"* |
| <br>*"Hawks Heels and Gators"* | <br>*"Bravado at its Best"* |

5



*"Driveway Drama"*

19. By transforming discarded items into fine art, Mr. Winston invites the public into his work and blurs the line between high art and accessible storytelling.

20. Mr. Winston's practice has garnered the attention of influential figures across creative fields. The late Virgil Abloh, a trailblazing designer and cultural icon, was an early supporter who collected Winston's work and publicly championed its resonance and conceptual clarity. Mr. Winston's work also caught the attention of globally renowned artist Takashi Murakami, who acquired his work and invited him to exhibit at his gallery, Hidari Zingaro, in Tokyo. These connections have helped further solidify Mr. Winston's place on the international contemporary art stage.

21. The significance of Mr. Winston's work extends deeply into the basketball community. Tony Parker, a former elite basketball player turned art advisor, has spoken about the profound impact Mr. Winston's work has had on him. Mr. Parker regularly introduces Mr. Winston's work to athlete-collectors who relate to the emotional and visual language of his sculptures.

22. Mr. Winston's art has also reached institutional levels within the NBA itself. He was commissioned by Cleveland Cavaliers owner Dan Gilbert to produce three large-scale

6

sculptures, including a grid composed of 168 flattened basketballs. This piece is expected to become the largest of its kind owned by an NBA team, surpassing even the major installation previously acquired by Philadelphia 76ers co-owner Michael Rubin.

23. His work is part of the permanent art collection installed at Rocket Mortgage FieldHouse, where it is displayed alongside artists such as KAWS, Shepard Fairey, and Daniel Arsham. The Cavaliers were the first NBA franchise to establish a formal in-arena art program, and Mr. Winston's inclusion further underscores the cultural legitimacy of his work.

24. Tom Gores, the owner of the Detroit Pistons, has purchased artwork created by Mr. Winston and has publicly displayed Mr. Winston's works at the Detroit Pistons' facility.

25. In 2024, Mr. Winston was selected to showcase his art during the NBA All-Star Weekend in Indianapolis, where he also collaborated with '47 Brand and the NBA to release a limited-edition capsule collection. This opportunity highlighted his unique crossover appeal within both the professional basketball and fine art communities.

26. Mr. Winston is represented by Library Street Collective, a leading contemporary art gallery that has championed his work across major cultural centers. His exhibitions have taken place in New York, Los Angeles, Detroit, Paris, Tokyo, Stockholm, Brussels, Hong Kong, Seoul, and Athens.

27. Notable exhibition venues include Library Street Collective (Detroit), McNay Art Museum, Columbus Art Museum, Stems Gallery (Brussels and Paris), and Hidari Zingaro (Japan)., where his grid-based basketball sculptures have drawn both critical praise and curatorial attention.

28. His work has been featured in national and international media including The New York Times, USA Today, Artsy, MutualArt, SLAM Magazine, Detroit News, Metal Magazine,

Highsnobiety, Hypebeast, and StreetArtNews. These features have consistently underscored the cultural and aesthetic distinctiveness of his basketball sculptures.

29. In addition to fine art, Mr. Winston has extended his practice into the realms of streetwear and sneaker culture. He has collaborated with major brands including Adidas, Reebok, '47 Brand, Mitchell & Ness, and the NBA.

30. Mr. Winston partnered with Reebok to design limited-edition sneakers: the Club C and the Question Mid. Each featured his signature visual elements, translucent soles, and personal iconography referencing New York's streetball legacy.

31. Mr. Winston's rising profile also led to him becoming a visual artist featured in the flagship store of Aimé Leon Dore, a prominent global fashion brand. His work served as an immersive installation, further blurring the boundary between contemporary art and lifestyle design.

32. Mr. Winston has achieved institutional validation and critical acclaim through a unique and conceptually rigorous practice. His work exemplifies the power of reinterpreting everyday materials to express complex ideas.

33. As a result of more than a decade of sustained, widely visible artistic production and cultural integration, Mr. Winston's flattened, grid-based basketball sculptures are strongly and uniquely associated with him by the public, collectors, and the basketball community.

34. Under the Copyright Act, 17 U.S.C. § 201(a), Mr. Winston holds and owns the copyright to all his creations, including in the Artwork. The Artwork is an original work of authorship, fixed in a tangible medium of expression, containing substantial amounts of the Mr. Winston's original creativity.

35. Moreover, Mr. Winston holds valid U.S. Copyright Registrations for the Artwork: VA 2-453-149 and VA 2-453-148. *See* Exhibit A.

36. A high-resolution copy of the Artwork, in which its distinctive details and craftsmanship are more clearly visible, is attached hereto as Exhibit B.

37. As the copyright holder, Mr. Winston has the exclusive right under 17 U.S.C. § 106 to reproduce, make derivative works of, publicly distribute, and publicly display the Artwork.

**The Infringing Posts**

38. In or around September and October 2024, Mr. Winston discovered that Defendant had posted images of an installation consisting of deflated basketballs arranged in a grid pattern, a work that is substantially similar to his iconic Artwork, to the Pelicans' official Instagram account @pelicansnba.

39. The Infringing Work is substantially similar to Mr. Winston's registered works in concept, arrangement, visual impact, and expression.

40. Examples of the Infringing Posts include:

9

| **Infringing Posts** |
|---|
|  |
| https://www.instagram.com/p/DAjCmnhR4Kh/?img_index=1 |

| https://www.instagram.com/p/DAjRGLdxZ4v/?img_index=1 |
|---|
|  |
| https://www.instagram.com/p/DAllWJDOgO2/?img_index=1 |

41.     The Infringing Work copies several protectable elements of Mr. Winston's Artwork, including but not limited to:

   a.  The distinctive grid-based composition of deflated basketballs.

   b.  The intentional deflation of each ball to mimic the aesthetic of Mr. Winston's Artwork.

   c.  The matching color palette, which together create the distinctive worn, monochromatic effect characteristic of Mr. Winston's Artwork.

   d.  The deliberate selection of similar brands of basketballs

   e.  The juxtaposition of worn sporting objects in a fine art presentation.

   f.  The spatial arrangement and negative space between the objects.

    g.  The framing used to present the basketballs on a vertical surface.

    h.  The precise uniformity of the grid, despite the organic wear of each ball.

    i.  The overall visual impression, including the evocation of urban life, nostalgia, and cultural commentary.

42. In response to the Infringing Posts, several individuals commented under the impression that the Infringing Work was artwork created by Tyrrell Winston:





43. Upon information and belief, Defendant had both direct and indirect access to Mr. Winston's works through its industry connections and Mr. Winston's extensive press coverage and exhibitions; through his installation at the 2024 NBA All-Star Weekend, which was attended by NBA teams and affiliates; and through Mr. Winston's prior commissions for NBA teams. Thus, the infringement could not have been accidental.

44. The Infringing Work was used for promotional and marketing purposes by Defendants. Defendants used the Infringing Work prominently in social media marketing, generating thousands of "likes," comments, and shares, all without Mr. Winston's permission.

45. Upon information and belief, the Pelicans created or commissioned the Infringing Work intentionally to capitalize on the distinctiveness of Mr. Winston's signature style and the popularity of the Artwork.

46. Upon information and belief, Defendant Pelicans collaborated with, directed, or were assisted by John Does 1-5 in the creation of the Infringing Work. John Does 1-5 are entities or individual principals, employees, contractors, and/or consultants of Defendant who were responsible for the production, direction, design, promotion, and/or distribution of the Infringing Work, including, without limitation, the procurement of source materials, and/or who have received a direct or indirect financial benefit from the same.

47. Upon information and belief, John Does 1-5 acted under the direction and/or supervision of Defendant.

48. On information and belief, Defendant had actual or constructive knowledge of the infringing activities complained of herein, participated materially in said activities, had the right and ability to control said activities, and stood to realize, have realized and continue to realize, a direct and indirect financial benefit therefrom.

49. Mr. Winston never authorized the creation or public display of the Infringing Work, nor the Infringing Posts.

50. Upon information and belief, Defendant's identical copying and exploitation of the Artwork was willful, and in disregard of, and with indifference to, the rights of Mr. Winston. By failing to obtain Mr. Winston's authorization to use the Artwork or to compensate Mr. Winston for the use, Defendant has avoided payment of license fees and other financial costs associated with obtaining permission to exploit the Artwork, as well as the restrictions that Mr. Winston is

entitled to and would place on any such exploitation as conditions for Mr. Winston's permission, including the right to deny permission.

51. As a result of Defendant's conduct, Mr. Winston has suffered and continues to suffer damages, including loss of licensing opportunities, harm to goodwill, and dilution of the value of his works.

52. On October 2, 2024, Mr. Winston, through his counsel, sent a cease-and-desist letter to Defendant Pelicans regarding the Infringing Posts.

53. Yet, Defendant has persisted in publicly posting and distributing the Infringing Posts.

54. As a result of Defendant's actions, Mr. Winston has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, publication, distribution, and public display of the Artwork. Defendant's actions have significantly damaged the value of the Artwork, all of Mr. Winston's other works, and the value of any licenses for his artworks in the relevant markets.

55. Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Mr. Winston for which he has no adequate remedy at law.

## CLAIMS FOR RELIEF

### COUNT I – Copyright Infringement

56. Mr. Winston repeats and realleges the allegations set forth in Paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57. As a work of art, the Artwork is copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. seq. Mr. Winston is the exclusive owner of rights under copyright in and to the Artwork. Mr. Winston owns a valid copyright

registration for the Artwork.

58. The acts of Defendants constitute infringement of Mr. Winston's copyrights in the Artwork in violation of the Copyright Act, 17 U.S.C. § 106. Specifically, the use of the Infringing Work, which is a reproduction of the Artwork, in the Infringing Posts constitutes copyright infringement.

59. Upon information and belief, the foregoing acts of infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifference to Mr. Winston's rights.

60. As a direct and proximate result of Defendant's foregoing acts, Mr. Winston is entitled to actual damages and disgorgement of Defendant's profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

61. Unless and until Defendant's ongoing conduct with respect to the Infringing Content is enjoined by this Court, such conduct will continue to cause irreparable injury to Mr. Winston's legacy and the integrity of the Artwork that cannot fully be compensated for or measured in money, and Mr. Winston is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of his exclusive rights under copyright.

## COUNT II – Vicarious Copyright Infringement

62. Mr. Winston repeats and realleges the allegations set forth in Paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63. As a work of visual art, the Artwork is copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. seq. Mr. Winston is the exclusive owner of rights under copyright in and to the Artwork. Mr. Winston owns valid copyright registrations for the Artwork.

64. Defendant had the right and ability to supervise or control the use of the Artwork in the Infringing Work but failed to exercise such control.

65. Defendant derived a direct financial benefit from the Infringing Posts, including increased revenue and enhanced publicity.

66. Rather than taking steps to prevent the infringement, Defendant knowingly allowed it to continue and reaped the benefits of the unauthorized use.

67. The acts of Defendant constitute vicarious infringements of the Artwork's copyright and exclusive rights under copyright in the Artwork in violation of the Copyright Act, 17 U.S.C. § 106.

68. Upon information and belief, the foregoing acts of vicarious infringement by Defendant have been willful, intentional, and purposeful, in disregard of and indifference to Mr. Winston's rights.

69. As a direct and proximate result of Defendant' foregoing acts, Mr. Winston is entitled to actual damages and disgorgement of Defendant' profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

70. Unless and until Defendant's ongoing conduct with respect to the Infringing Content is enjoined by this Court, such conduct will continue to cause irreparable injury to Mr. Winston's legacy and the integrity of the Artwork that cannot fully be compensated for or measured in money, and Mr. Winston is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of his exclusive rights under copyright.

### COUNT III – Contributory Copyright Infringement

71. Mr. Winston repeats and incorporates by reference the allegations contained in Paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72. As a work of visual art, the Artwork is copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. seq. Mr. Winston is the exclusive owner of rights under copyright in and to the Artwork. Mr. Winston owns valid copyright registrations for the Artwork.

73. Upon information and belief, Defendant Pelicans collaborated with, directed, or were assisted by John Does 1-5 in the creation of the Infringing Work. John Does 1-5 are entities or individual principals, employees, contractors, and/or consultants of Defendant who were responsible for the production, direction, design, promotion, and/or distribution of the Infringing Work, including, without limitation, the procurement of source materials, and/or who have received a direct or indirect financial benefit from the same.

74. Defendant knowingly induced, caused, or materially contributed to the creation and distribution of the Infringing Content.

75. Defendant had actual or constructive knowledge of the infringement and failed to take reasonable steps to prevent it.

76. The acts of the Defendant constitute contributory infringements of Mr. Winston's copyright and exclusive rights under copyright in the Artwork in violation of the Copyright Act, 17 U.S.C. § 106.

77. Upon information and belief, the foregoing acts of contributory infringement by Defendant have been willful, intentional, and purposeful, in disregard of and indifference to Mr. Winston's rights.

78. As a direct and proximate result of Defendant's foregoing acts, Mr. Winston is entitled to actual damages and disgorgement of the Defendant's profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

79. Unless and until Defendant's ongoing conduct with respect to the Infringing Content is enjoined by this Court, such conduct will continue to cause irreparable injury to Mr. Winston's legacy and the integrity of the Artwork that cannot fully be compensated for or measured in money, and Mr. Winston is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of his exclusive rights under copyright.

**WHEREFORE**, Mr. Winston prays for judgment as follows:

A. Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendant's creation of an unauthorized copy, unauthorized duplication, public display, distribution of the Artwork infringes Mr. Winston's copyright in the Artwork, in violation of 17 U.S.C. § 501;

B. Granting a permanent injunction prohibiting Defendant from (i) further infringement of Mr. Winston's copyright, including further airing of, or making available to the public, the Infringing Posts, and further production or transfer of the Infringing Work or any infringing images of the Artwork, including but not limited to promotional materials;

C. Awarding Mr. Winston the actual damages he has suffered in connection with damage to Mr. Winston's reputation and the market for Mr. Winston's works, including the Artwork, and the profits directly and indirectly attributable to the Defendant arising from the foregoing acts of copyright infringement;

D. Awarding pre-judgment interest as allowed by law; and

E. Awarding such further legal and equitable relief as the Court deems proper.

## JURY DEMAND

Plaintiff, Tyrrell Winston, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: July 30, 2025

                                              Respectfully submitted,

                                              JAYARAM PLLC

                                              **/s/** Vivek Jayaram

                                              Vivek Jayaram
                                              Jayaram Law PLLC
                                              54 W. 21st Street, Suite 801
                                              New York, NY 10010
                                              Phone: 646-596-1322
                                              vivek@jayaramlaw.com

                                              *Counsel for Plaintiff Tyrrell Winston*